## THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

DANIEL FAGBUYI          )
                        )
    Plaintiff,          )
                        )
v.                      )      Case No. CAL22-22047
                        )
MGM NATIONAL HARBOR LLC )
                        )
    Defendant.          )
                        )
CSC-LAWYERS             )
INCORPORATING SERVICE   )
COMPANY                 )
7 ST. PAUL STREET       )
SUITE 820 BALTIMORE MD 21202 )
_____ )

### AMENDED COMPLAINT
### (JURY TRIAL DEMANDED)

COMES NOW, Plaintiff, DANIEL FAGBUYI (hereinafter "Plaintiff"), by and through undersigned counsel, and files this AMENDED COMPLAINT for damages against Defendant, MGM NATIONAL HARBOR LLC (hereinafter "Defendant" or "MGM") and for cause would show unto the Court the following:

### PARTIES

1.    Plaintiff is an adult male residing at 3919 Sunflower Circle, Bowie, Maryland.

2.    Defendant is a hotel and casino operating at 101 MGM National Avenue, Oxon Hill, Maryland, with their corporate headquarters located at 3950 Las Vegas Boulevard South, Las Vegas, Nevada.

1

Exhibit C

## JURISDICTION AND VENUE

3.     This is a suit to obtain relief for trespass, conversion, unreasonable intrusion upon the seclusion of Plaintiff, breach of fiduciary duty, negligence, and negligent hiring.

4.     The jurisdiction of this court is invoked pursuant to Maryland Courts and Judicial Proceedings §6-102(a).

## FACTUAL ALLEGATIONS

5.     On or around October 24, 2021 through October 25, 2021, Plaintiff stayed at MGM National Harbor in Suite #11006.

6.     Plaintiff is a distinguished ER Physician, internationally recognized Biodefense Expert, Chief Medical Officer, and Media Expert who regularly appears on television and publishes op-eds on medical issues, including most recently his research and efforts made to debunk the myths regarding the Covid-19 Vaccines.

7.     On or about October 25, 2021, at approximately 12:02 AM, Plaintiff and his guest left Suite #11006 for approximately an hour and a half, securely locking his door behind him.

8.     While exiting the hotel, Plaintiff was seen by and spoke to the front desk attendant.

9.     Immediately after Plaintiff left the suite, security footage shows that an unidentified suspect came into the hotel after arriving on a Lime Scooter, 2020 Jiangsu Niu Electric Motor-driven Cycle VIN: HA6N1R2D6M3002324, which he parked on the sidewalk between the MGM building Valet parking.

10.     This suspect went directly to the 11th floor using the stairwell.

11.     Upon arriving on the 11th floor, the suspect went directly to Plaintiff's Suite, #11006.

12.     Security footage shows that the suspect made his first attempt using a wire hooking burglary tool to attempt to break into Plaintiff's suite, #11006, but failed and returned to his Lime scooter.

13.     Security footage then shows the suspect making his second attempt by returning from his Lime Scooter, back up to the 11th floor and directly to Plaintiff's Suite, #11006, again.

14.     Using the wire hooking burglary tool, the Suspect stood in the hallway attempting to unlock Plaintiff's door using the wire hooking burglary tool for up to an hour (60 minutes) without being stopped or questioned.

15.     Using the wire hooking burglary tool, suspect successfully unlocked Plaintiff's door and broke into Plaintiff's Suite, #11006.

16.     Upon entering Plaintiff's room, the suspect steals Plaintiff's major and personal effects including, but not limited to, a HP Spectre Laptop x360 with business and medical information and research, cash in the amount of $1,600, credit and debit cards, and various personal items.

17.     Security footage then shows the suspect exited Suite #11006 holding a pillow case containing these items.

18.     Security footage then shows the suspect fled in a Ride Share that picked him up from the roadway near the MGM Hotel Entrance.

19.     At or around 0130 AM, Plaintiff returned to his Suite, #11006, and noticed his personal items and cash had been stolen and he immediately notified Defendant, MGM of the breach and the stolen items.

20.     Defendant MGM then conducted an internal security investigation, without notifying the police of the burglary and without informing Plaintiff that the police had not and would not be notified by Defendant, MGM.

21.     When Plaintiff realized no police were contacted, Plaintiff called the Prince George's County Police Department himself and reported the breaking and entering and stolen property and cash.

22.     As a result of Defendant MGM's internal investigation, Defendant MGM identified the Lime Scooter used by the Suspect as 2020 Jiangsu Niu Electric Motor-driven Cycle and the Lime Scooter's VIN number.

23.     According to Defendant MGM's internal investigation, some days later, the Suspect returns to the hotel with two bags containing some of the stolen items he took from Plaintiff's Suite, #11006.

24.     On October 28, 2021, Defendant, MGM somehow located the two bags (that had been in possession of the Suspect when he later returned to the hotel) in the 4th floor SPA locker room.

25.     The two bags that were later discovered in the SPA locker room contained some of the items that the Suspect took away with him in the Ride Share when he fled from Plaintiff's Suite #11006 on October 25, 2021.

26.     Defendant MGM has information related to the identity of the suspect and somehow knew when the Suspect re-entered the hotel and that the Suspect had possession of "two bags" which he placed into Defendant's 4th floor SPA bathroom locker room and has not informed the police or Plaintiff of such identifying information.

27.     The evidentiary items found inside the bags found by Defendant in the SPA locker room were not turned over to the Prince George's County Police Department Investigator until twelve (12) days later, on November 8, 2021.

28.     Upon watching some of the security footage, the Prince George's County Police Department verified that the suspect arrived on a Lime scooter and went directly to Plaintiff's suite, #11006, to break into the room during the hour Plaintiff was out of his room.

29.     Upon information and belief and based on the Defendant MGM's security footage, it is determined that there were MGM employees/agents in the hallway, who had notice of when the Plaintiff left his Suite, #11006.

30.     During all times relevant, the only people who were aware that Plaintiff and Plaintiff's guest were specifically staying in Suite #11006, were Defendant MGM and Defendant's employees.

31.     After the burglary, Plaintiff was unable to attend four scheduled TV appearances and a scheduled emergency room shift as he was cooperating with the investigations and the handling of his personal affairs related to securing his identity and finances.

32.     Also, because of the burglary, Plaintiff suffered substantial loss of research, including confidential medical materials that were contained on the stolen laptop.

33.     Despite giving the Defendants MGM security team and the police the tracking information connected to his laptop, the laptop has still not been located.

34.     At all times relevant, Defendants are required to provide security for Plaintiff and his property and/or baggage and are liable if they fail to do so.

35.     Defendants have promoted on their website that "they foster a close working relationship with local authorities in every market. Our professionals will work closely with the police . . . to create and maintain a safe and welcoming environment for our guests."

## COUNT I: VICARIOUS LIABILITY

36.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

37.     Employers are vicariously liable for the tortious actions of their employees.

38.     Vicarious liability imputes the actual guilt of employees' actions to the employer.

39.     Suspect went directly to Plaintiff's Suite #11006 twice immediately upon Plaintiff leaving.

40.     The only other individuals who knew both (a) which room Plaintiff and his guest were staying in and (b) that Plaintiff had left Suite #11006 at that exact time were Plaintiff, his guest, and the Defendant, MGM hotel employees.

41.     The Defendants MGM knew and/or should have known, as they had access to security footage that indicated a break-in and burglary was occurring in Plaintiff's Suite, #11006.

42.     The Defendants MGM knew and/or should have known, that the Suspect was breaking into Plaintiff's room, as they had employees in the 11th floor hallway where Plaintiff's Suite, #11006 is located, at the time and/or during the hour that the Suspect spent attempting to breach the door of Plaintiff's room using the wire hooking burglary tool.

43.     The Defendant MGM ordered their security team to conduct an internal investigation and the security team did conduct the internal investigation on behalf of Defendant MGM.

44.     Defendant is vicariously liable for the actions and negligence of its employees and/or agents.

## COUNT II: TRESPASS

45.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

46.     The tort of trespass in Maryland requires that plaintiff establish an interference with a possessory interest in his property through the defendant's physical act or force against that property which was executed without plaintiff's consent. *United Food and Com. Worker Int'l Union v. Wal-Mart Stores, Inc.*, 228 Md.App. 203, 234 (Md. Ct. Spec. App. 2016) (citing *Royal Inv. Grp., LLC v. Wang*, 183 Md.App. 406, 444-45 (2008)).

47.     Plaintiff alleges that Defendant MGM, its employees or agents, and/or the Suspect committed the common law tort of trespass.

48.     Hotel guests have a possessory interest in the hotel room that they reserve and occupy. *Smith v. State*, 415 Md. 174, 189 (2010) (quoting *Taylor v. State*, 346 Md. 452, 465 (1997).

49.     At all times relevant, Plaintiff was a registered hotel guest staying in Suite #11006, and at all times had a possessory interest in the room.

50.     On or about October 25, 2021, the Suspect breached the door of Suite #11006, interfering with Plaintiff's possessory interest.

51.     Defendant breached the door through the forcible application of burglary tools to the locking mechanisms of the door of Suite #11006.

52.     After forcibly breaching Plaintiff's room door, Suspect then entered into Plaintiff's Suite, #11006 and took several of Plaintiff's personal items and cash.

53.     Plaintiff did not grant any form of permission to the Suspect to affect such an entry into his suite or take any items.

54.     Plaintiff locked his door, attempting to prevent anyone from accessing his room without permission.

55.    Defendant MGM had notice that Plaintiff had left his room at approximately 12:02 AM, and Defendant MGM had security footage in the 11th floor hallway where Plaintiff's suite was located.

56.    The only individuals who knew which room the Plaintiff and his guest were staying in were the Defendant MGM and its employees.

57.    There is no way that Suspect could have know Plaintiff's exact room number, along with the precise time Plaintiff left his room at 12:02 AM, without being notified by Defendant MGM's employees and/or agents.

58.    At no time during the hour-long break-in, did Defendant MGM or its security team stop the Suspect, or notify the Plaintiff of the break-in.

59.    This was thus an interference with Plaintiff's possessory interest in his hotel room, executed forcibly without his consent.

60.    As a proximate result of this unlawful trespass, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking to reclaim his personal security and property, lost earnings from four scheduled TV appearances and a scheduled emergency room shift, as well as a substantial loss of research, including confidential medical materials that were contained on the stolen laptop.

61.    As a further proximate result of this unlawful trespass, Plaintiff has suffered and continues to suffer embarrassment, humiliation, mental anguish, and other general damages, in an amount to be shown according to proof.

62.    Suspect and his accomplices committed this trespass with conscious and deliberate wrongdoing, entitling Plaintiff to punitive damages for this action.

63.     Plaintiff demands judgment against the Defendant, a trial by jury on all issues so triable, and any other relief this Court deems just and proper.

## COUNT III: CONVERSION

64.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

65.     The tort of conversion in Maryland requires that the plaintiff establish their right to possess the property and defendant's intentional taking of the property without authority or permission. *Travel Comm. v. Pan Am. World Airways, Inc.*, 91 Md.App. 123, 183 (Md. Spec. Ct. App. 1992).

66.     Plaintiff alleges that Defendant MGM, its employees or agents, and/or the Suspect committed the common law tort of conversion.

67.     At all time relevant, the stolen property including, but not limited to, his HP Spectre Laptop x360 with confidential business and medical information and research, cash in the amount of $1,600, credit and debit cards, and various personal items belonged to Plaintiff.

68.     Plaintiff had a right to possess property that belonged to him.

69.     On or about October 25, 2021, the Suspect forcibly broke into Plaintiff's Suite, #11006.

70.     After doing so, the Suspect stole several items from Plaintiff's suite, including, but not limited to, his HP Spectre Laptop x360 with confidential business and medical information and research, cash in the amount of $1,600, credit and debit cards, and various personal items.

71.     At no time did Plaintiff grant permission to Defendant MGM or the Suspect to effect any such a taking of any of his personal property.

72.     Neither Defendant MGM nor the Suspect had any interest in Plaintiff's property, and neither had any right to possess the Plaintiff's property.

73.     On or about October 25, 2021, at approximately 12:02 AM, Plaintiff and his guest left Suite, #11006, and spoke with the Defendant MGM's employees at the desk as they walked by, thus giving Defendant MGM notice that Plaintiff was out of his hotel room.

74.     Immediately after Plaintiff left his room, the Suspect, using the staircase, went directly to the 11th floor and directly to Plaintiff's Suite, #11006 and upon initially failing to break into the room, returned to his Lime Scooter and then returned again, directly to Plaintiff's room and successfully broke into the room.

75.     The Suspect spent approximately an hour trying to break specifically into Plaintiff's Suite, #11006

76.     Thus, the intrusion into Plaintiff's Suite, #11006 was clearly intentional.

77.     No notice was posted anywhere in Plaintiff's Suite, #11006, of any waiver of hotel liability for stolen property.

78.     As a proximate result of the conversion, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking to reclaim his personal security and property, lost earnings from four (4) scheduled TV appearances and a scheduled emergency room shift, as well as his confidential and protected information and research relating to his medical profession.

79.     As a further proximate result of the conversion, Plaintiff has suffered and continues to suffer embarrassment, humiliation, mental anguish, and other general damages, in an amount to be shown according to proof.

80.     The Suspect and his accomplices committed this conversion with conscious and deliberate wrongdoing, entitling Plaintiff to punitive damages for this action.

81.     Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief this Court deems just and proper.

## COUNT IV: UNREASONABLE INTRUSION UPON PLAINTIFF'S SECLUSION

82.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

83.     The tort of unreasonable intrusion upon plaintiff's seclusion in Maryland requires that a plaintiff establish that the defendant intentionally intruded, physically or otherwise, upon the solitude of seclusion of another or his private affairs or concerns is subject to liability, if the intrusion would be highly offensive to a reasonable person. *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 525-26 (1997).

84.     Plaintiff alleges that Defendant MGM, its employees or agents, and/or the Suspect committed the common law tort of unreasonable intrusion upon plaintiff's seclusion.

85.     On or about October 25, 2021, at approximately 12:02 AM, Plaintiff and his guest left Suite, #11006, and spoke with the Defendant MGM's employees at the desk as they walked by, thus giving Defendant MGM notice that Plaintiff was out of his hotel room.

86.     Immediately after Plaintiff left his room, the Suspect, using the staircase, went directly to the 11th floor and directly to Plaintiff's Suite, #11006 and upon initially failing to break into the room, returned to his Lime Scooter and then returned again, directly to Plaintiff's room and successfully broke into the room.

87.     The Suspect, upon initially failing to break into the room, returned to his Lime Scooter, only to then return to the 11th floor, again, directly to Plaintiff's Suite, #11006.

88.     The Suspect spent an hour trying to break into Plaintiff's Suite, #11006.

89.     Thus, the intrusion into Plaintiff's Suite, #11006 was clearly intentional.

90.     At all times, Plaintiff had a reasonable expectation of privacy in his hotel suite.

91.     Plaintiff's Suite, #11006 was not an area held open to the public; rather, it was reserved exclusively for Plaintiff.

92.     Plaintiff's private hotel suite contained a variety of private personal and business items that he wished to keep away from the public at large.

93.     Plaintiff did not grant permission to the Defendant MGM, its employees, agents, or the Suspect to by any means, break into Plaintiff's Suite, and take his personal and business items and cash.

94.     Thus, this intrusion was both unreasonable and highly offensive and an unreasonable intrusion into Plaintiff's seclusion

95.     As a proximate result of the unreasonable intrusion into Plaintiff's seclusion, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking to reclaim his personal security and property, lost earnings from four scheduled TV appearances and a scheduled emergency room shift, as well as his confidential and protected information and research relating to his medical profession.

96.     As a further proximate result of the unreasonable intrusion into Plaintiff's seclusion, Plaintiff has suffered and continues to suffer embarrassment, humiliation, mental anguish, and other general damages, in an amount to be shown according to proof.

97.     The Suspect and his accomplices committed this unreasonable intrusion into Plaintiff's seclusion with conscious and deliberate wrongdoing, entitling Plaintiff to punitive damages for this action.

98.     Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief this Court deems just and proper.

## COUNT V- BREACH OF FIDUCIARY DUTY

99.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

100.    A claim for breach of fiduciary duty in Maryland requires that the Plaintiff prove the existence of a fiduciary relationship, a breach of duty owed by the fiduciary to the beneficiary, and harm resulting from the breach.

101.    A fiduciary relationship exists wherever there is confidence reposed on one side and resulting superiority on the other, even in the absence of a formal relationship. *Gaggers v. Gibson*, 180 Md. 609, 613 (1942); *see also Wagner v. State*, 445 Md. 404, 442 (2015).

102.    Plaintiff left his property unattended in his Suite, #11006 while he and his guest went out for an hour and a half.

103.    At all times relevant, Plaintiff's door was locked.

104.    Plaintiff placed great confidence in Defendant that they would not break into his Suite, #11006 and steal his property and that they would provide security measures to prevent employees or agents from doing such.

105.    Defendant MGM, its employees and agents, are the only ones who could prevent such a crime from being committed by their employees or agents, as Plaintiff does not have any ability to control or monitor them.

106.    Defendant was the only one who could secure the hotel, as no one else could provide security measures such as guards and effective locks or security cameras.

107.    At all times relevant and as a guest of Defendant MGM's hotel, Plaintiff reserved his belief and trust that Defendant MGM had security measures that would prevent unauthorized entering into his room and that such security measures would protect his property in the room.

108.    Thus, a relationship of confidence and superiority existed, creating a fiduciary duty.

109.     Defendant MGM breached that duty by failing to provide proper security as to prevent an unauthorized entering into Plaintiff's room and unlawful taking of his property.

110.     Defendant MGM further breached that duty by failing to provide proper security investigation and cooperation with local law enforcement to have the Suspect identified and located.

111.     No notice was posted anywhere in Plaintiff's Suite, #11006, of any waiver of hotel liability for stolen property.

112.     As a proximate result of Defendant's breach of fiduciary duty, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking to reclaim his personal security and property, lost earnings from four scheduled TV appearances and a scheduled emergency room shift, as well as his confidential and protected information and research relating to his medical profession.

113.     As a further proximate result of Defendant's breach of fiduciary duty, Plaintiff has suffered and continues to suffer embarrassment, humiliation, mental anguish, and other general damages, in an amount to be shown according to proof.

114.     Defendant MGM, its employees or agents committed this breach of fiduciary duty with conscious and deliberate wrongdoing, entitling Plaintiff to punitive damages for this action.

115.     Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief this Court deems just and proper.

## COUNT VI- NEGLIGENCE

116.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

117.     Claims of negligence in Maryland require that plaintiff establish that the defendant was under a duty to protect plaintiff from injury, that the defendant breached that duty, that the

defendant's breach of the duty proximately caused the injury or loss suffered by the plaintiff, and that the plaintiff suffered actual loss or injury. *Troxel v. Iguana Cantina, LLC*, 201 Md.App. 476, 495 (Md. Ct. Spec. App. 2011).

118.   Defendant owed a duty of care to Plaintiff, as hotels have a duty of care to provide for the security of their guests and their guests' baggage.

119.   Defendant breached their duty of care to their guests to provide adequate security and maintain the privacy of their guests, namely Plaintiff who was staying in Suite #11006.

120.   At all times relevant, Plaintiff trusted Defendant MGM not to release his private information, whereabouts, or status of being in Suite #11006 to others.

121.   At all times relevant, Plaintiff trusted Defendant MGM not to watch for Plaintiff to leave his room as to inform the Suspect when they could access it while Plaintiff was stepped out.

122.   As soon as Plaintiff left his Suite, #11006, at approximately 12:03 PM, Defendant MGM, its employees or agents, notified the Suspect and he immediately came up the stairs directly to Plaintiff's suite, #11006.

123.   The only individuals who knew which room the Plaintiff and his guest were staying in were the Defendant MGM and its employees.

124.   Defendant breached their duty of care to their guests to provide adequate security and locking mechanisms on Plaintiff's door to Suite #11006.

125.   During the Defendant MGM's internal investigation, it was discovered that at all times relevant, Plaintiff did lock his door upon exiting his room, and is not in any way contributorily negligent to the break-in or theft of his property.

126.   Suspect was able to break into Plaintiff's Suite #11006 using a wire tool.

127.   Reasonable secure locking mechanisms and hotel security would have prevented this unauthorized access to Plaintiff's private Suite #11006.

128.   Thus, Defendant did not provide adequate security and locking mechanisms on the door that would reasonably deter and/or prevent burglary.

129.   Had Defendant MGM done so, the Suspect never would have been able to unlawfully trespass into the Plaintiff's room using a wire tool, and Plaintiff's personal items and cash would not have been stolen.

130.   Defendant MGM is also negligent for the failure of the security team to use reasonable care to stop the burglary while it was in process and failure to secure Plaintiff's suite and property.

131.   The Suspect's actions of breaking into Plaintiff's Suite, #11006, for up to an hour (60 minutes) were recorded on security cameras.

132.   However, Defendant MGM did not have any employee properly or reasonably monitoring the security cameras and/or Defendant MGM's employees did not report this crime in process.

133.   Defendant MGM was also negligent for failing to take reasonable measures to prevent the unlawful break-in or failing to timely notify the local law enforcement authorities.

134.   Had Defendant MGM taken these reasonable measures, Defendant MGM and/or the local law enforcement would have been able to stop the burglary before it happened, preventing any damage to Plaintiff.

135.   The Defendant MGM is also negligent for the failure of the security team to call the local police immediately after the burglary took place, and once they identified the suspect, as well as when they located some of the stolen items in the SPA locker room.

136.   Had the Defendant MGM notified the local police as soon as they learned of the unlawful break-in, the proper authorities could have initiated a proper investigation, found the ride-share the Suspect used to flee the scene, and tracked the laptop using the tracking device located inside of it prior to the laptop being untraceable.

137.   Had Defendant MGM conducted a proper internal investigation and immediately contacted the police, they would have been able to immediately apprehend the Suspect and return Plaintiff's stolen goods and determine what private information of Plaintiff had been exposed, limiting any damage to Plaintiff.

138.   Defendant MGM is liable to Plaintiff for their negligence in failing to provide proper security and to maintain reasonable privacy of the Plaintiff's whereabouts, and failing to conduct a reasonable internal investigation, failure to provide safekeeping for the Plaintiff's personal items, and failure to contact the authorities despite promising to do so on their website.

139.   No notice was posted anywhere in Plaintiff's Suite, #11006, of any waiver of hotel liability for stolen property.

140.   As a proximate result of Defendant's negligence, as set forth above, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking to reclaim his personal security and property, lost earnings from four scheduled TV appearances and a scheduled emergency room shift, as well as his confidential and protected information and research relating to his medical profession.

141.   As a further proximate result of Defendant's negligence, Plaintiff has suffered and continues to suffer embarrassment, humiliation, mental anguish, and other general damages, in an amount to be shown according to proof.

142.    Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief this Court deems just and proper.

### COUNT VII- NEGLIGENT HIRING

143.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein in full.

144.    Claims of negligent hiring in Maryland require the existence of an employment relationship, the employee's incompetence, the employer's actual or constructive knowledge of such incompetence, the employee's act or omission causing the plaintiff's injuries, and the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Asphalt and Concrete Services, Inc., v. Perry*, 221 Md.App 235, 256 (Md. Ct. Spec. App. 2015).

145.    An employee relationship existed between Defendant MGM and its employees, the security team, and either the Suspect or the Suspect's accomplices.

146.    At all times relevant, the Defendant's security team, front desk monitor, and all other employees working or presenting themselves to be working in the hotel were employees or agents of Defendant MGM.

147.    At all times relevant, Defendant MGM's employees were incompetent, as they observed or should have observed, a Suspect using wire burglary tools was attempting to break into the hotel for over an hour.

148.    At all times relevant, Defendant MGM's employees were incompetent, as they knew or should have known that the police needed to be called immediately upon learning of a breaking and entering.

149.    At all times relevant, Defendant MGM's employees were incompetent, as they knew or should have known that they should not disclose the private information, whereabouts, or room numbers of their guests.

150.    At all times relevant, Defendant MGM's employees were incompetent, as they knew or should have known that they should immediately provide all information and evidence to allow a proper investigation to be complete by the local authorities.

151.    At all times relevant, Defendant MGM had actual and/or constructive knowledge of such incompetence because they were immediately put on notice of the burglary and had access to the surveillance footage; they were asked by Plaintiff to contact the local authorities and would have known their security team did not contact the local authorities; they had surveillance footage and refused to provide relevant information or identification of the suspect to the police or plaintiff; Defendant MGM also knew that its Employees somehow knew that the same Suspect had returned to the hotel days later holding two (2) bags, which he then placed in the SPA locker room.

152.    At all times relevant, Defendant MGM had actual and/or constructive knowledge of such employee incompetence because in, August 2020, Nathaniel Nagbe was staying at MGM National Harbor casino hotel and won a significant amount of money and then had his hotel room number disclosed to two gunmen who ultimately broke into his room, and shot him in efforts to take his winnings. Similarly, in March 2020, two men were violently attacked after, somehow, it was disclosed that they had won a significant amount of money. Having guest's hotel room numbers, status, whereabouts, and/or monetary earnings disclosed to perpetrators has been an ongoing pattern and issue at MGM National Harbor Hotel and Casino.

153.    The burglary did cause injuries to Plaintiff, as it resulted in the loss of property, missed TV appearances and emergency room shifts, and various general damages.

154.    Thus, the Defendant MGM's negligence in continuously hiring and retaining incompetent or untrained or inexperienced employees proximately caused Plaintiff's injuries.

## DEMAND FOR A JURY TRIAL

155.    The amount in controversy being greater than $15,000, the Plaintiffs demand a jury trial pursuant to Maryland Annotated Code, Courts, and Judicial Proceeding Article, § 4-402.

156.    The amount in controversy is greater than $75,000, obviating the necessity for an *ad damnum* clause as per Maryland Rule 2-305.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant MGM pursuant to an Order awarding:

a.  Compensatory damages to be determined by the trier of fact.

b.  Punitive damages to be determined by the trier of fact.

c.  Any such relief, deemed fair, just, and equitable under the circumstances of this case.

Respectfully submitted,

Charles Tucker, Jr., Esq.
The Cochran Firm Hyattsville
Maryland Bar No. # 0808260001
8181 Professional Pl., Suite 207
Hyattsville, MD 20785
Tel.: 301-577-1175
charles@tuckerlawgroupllp.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this _6th_ day of September 2022, a copy of the

foregoing has been sent through U.S. First Class mail to:

Emily Belanger
Wilson Elser Moskowitz Edelman & Dicker LLP
250 W. Pratt Street, Suite 2200
Baltimore, MD 21201

And e-mailed to: Emily.belanger@wilsonelser.com.

Respectfully submitted,

*Charles Tucker Jr., Esq./BAR*

Charles Tucker, Jr., Esq.
The Cochran Firm Hyattsville
Maryland Bar No. # 0808260001
8181 Professional Pl., Suite 207
Hyattsville, MD 20785
Tel.: 301-577-1175
charles@tuckerlawgroupllp.com